## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SIMPLOT INDIA LLC and SIMPLOT
INDIA FOODS PVT. LTD.,

      Petitioners,

      v.

HIMALAYA FOOD INTERNATIONAL
LTD,

      Respondent.

Civil Action No. 23-1612 (RK) (TJB)

**OPINION**

**KIRSCH, District Judge**

    **THIS MATTER** comes before the Court on a Petition to Confirm, Recognize, and Enforce Foreign Arbitral Award the ("Petition") filed by Petitioners Simplot India LLC and Simplot India Foods Pvt. Ltd., (ECF No. 1), as well as the Motion filed by Petitioners seeking the same relief, (ECF No. 2). Also pending is the Cross-Motion to Stay or Dismiss filed by Respondent Himalaya Food International Ltd. (ECF No. 23.) The Singapore International Arbitration Center ("SIAC") issued the award on May 8, 2020, and Petitioners now seek enforcement of the award in this District pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.[1] The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons that follow, Petitioners' Motion to Confirm (ECF No. 2) is **DENIED**, Respondent's Cross-Motion to Stay or Dismiss (ECF No. 23) is **DENIED** in part and **GRANTED** in part, and the Petition to Enforce (ECF No. 1) is **DISMISSED**.

---

[1] The matter was transferred to the Undersigned on May 15, 2023. (ECF No. 15.)

I.    **BACKGROUND** [2]

    A.    THE PARTIES AND THEIR UNDERLYING DISPUTE

Petitioners—Simplot India LLC and Simplot India Foods—are affiliates of J.R. Simplot Company, an Idaho-based agribusiness that produces and sells (mostly potato-based) food products domestically and internationally. (Award ¶¶ 1–3, 13.) Simplot India LLC is an Idaho limited liability company, and Simplot India Foods is an Indian company. (*Id.*) Respondent is an Indian company, listed on the Bombay Stock Exchange, that produces a variety of food products, including frozen potato products. (*Id.* ¶ 4.)

This matter arises out of the parties' joint venture in India. Simplot India LLC and Respondent entered into the Shareholders Agreement ("SA") in 2011. (Award ¶ 6, 13–14.) Under the SA, the parties agreed to establish Himalaya Simplot Pvt Ltd ("HSPL"), a joint venture company incorporated in India. (*Id.* ¶ 14.) The SA provided that Respondent would produce the food products and subsequently sell them to HSPL at the parties' facility in India. (*Id.* ¶ 103.) HSPL would then act as the "exclusive sales agent" for the products, in which Simplot India LLC would provide "expertise and brand reputation" assistance. (*Id.*) Products to be sold by the joint venture included "frozen potato products, breaded and battered appetizers, and certain shelf stable products." (*Id.* ¶ 105.)

The parties agree that issues quickly arose in the administration of the joint venture. (*Id.* ¶ 14.) In hopes of resolving these issues, the parties entered a second agreement in 2012—the Master Agreement ("MA")—under which Petitioners bought some of Respondent's equipment

---

[2] Except for the jurisdictional facts germane to the parties' dispute here—which the Court draws from the parties submissions in this matter—the Court relies on the discussion of background facts and procedural history contained in the March 24, 2020 arbitration award (the "Award"). (*See* Ex. 3 to Decl. of Scott R. Simplot ("Simplot Decl."), ECF No. 2-4.)

and took over use of the facility in India to produce the potato products, in exchange for $12.75 million. (*Id.* ¶¶ 117–20.) The parties' relationship broke down again as disputes arose concerning the parties' obligations and performance under the MA, and Petitioners vacated the facility in March 2023. (*Id.* ¶¶ 144–49.)

### B.   ARBITRATION PROCEEDINGS

From 2013 to 2020, the parties vigorously litigated their disputes via arbitrations and court proceedings in Singapore and India. (*See* Award ¶¶ 19–83.) As relevant to the present dispute, Petitioners initiated an arbitration proceeding before a SIAC Tribunal in July 2017, based on a provision in the MA requiring binding arbitration before SIAC. (*Id.* ¶¶ 9, 17.) Petitioners alleged breaches of the MA related to, among other complaints, inadequacies of the production equipment Respondent provided and issues with Petitioners' use of the facility. (*Id.* ¶ 14.) The SIAC Tribunal conducted a final evidentiary hearing in this matter, which took place over eight days and included extensive submissions from experts and witness testimony. (*Id.* ¶¶ 64–68.)

The SIAC Tribunal issued its 209-page final award on March 24, 2020. (*See generally* Award.)[3] The SIAC Tribunal found, in summary, that Respondent was in material breach of its obligations under the MA, as well as in breach of other clauses for which the Petitioners were awarded nominal damages. (*Id.* at *188–89.) SIAC awarded Petitioners $1,670,998 in damages and $674,814 in interest up to the date of the Award, (*id.*), as well as continuing interest on the Award at a rate of 5.33% per annum until paid, (Corrected Award ¶ 10). The SIAC Tribunal made explicit findings as to the conduct of each party throughout both SIAC arbitration proceedings and

---

[3] SIAC published a modified and corrected award shortly after the original Award on May 8, 2020 (the "Corrected Award"). (Petition ¶¶ 18–19, ECF No. 1; Ex. 4 to Simplot Decl., ECF No. 2-5.) The Corrected Award's only change was to alter the pre-award interest calculation. (*See id.* ¶ 10.)

found the Petitioners were also entitled to "party costs" (including attorney's fees) and directed Respondent to bear 90% of the total arbitration costs. (Award ¶¶ 49, 307, 942–53, 955.)

Several months after the issuance of the Award, Petitioners filed a petition to enforce it before the High Court of Delhi. (Decl. of Ravinder Singhania ("Singhania Decl.") ¶ 0, ECF No. 34-24.) Respondent objected to enforcement of the award on several grounds, (*id.* ¶ 1), and the parties continue to litigate those objections and other matters before the court in Delhi, (*id.* ¶¶ 2–3, 8–21.) Since the filing of the initial Petition and Cross-Motion to Stay or Dismiss, (ECF Nos. 1, 23), both parties have made clear that ongoing litigation relating to this matter is pending before the court in Delhi, (*see* ECF Nos. 38–42).

### C.    RESPONDENT'S NEW JERSEY TIES

Petitioners filed their Petition in this District based on their belief that Respondent is subject to personal jurisdiction here and that this Court can confirm and enforce the Award. (Petition ¶¶ 6–9.) Petitioners' jurisdictional claims appear to be based in small part on Respondent's direct contacts with New Jersey but are grounded more fully in Respondent's relationship to a related but separate New Jersey corporate entity.

Respondent's website identifies its officers as ManMohan Malik ("Malik"), its founder, chairman, and CEO, and Sanjiv Kakkar ("Kakkar"), its co-founder and president. (Ex. 2 to Decl. of Edward T. Decker ("Decker Decl."), ECF No. 34-3.) Malik and Kakkar also sit on Respondent's board of directors. (*Id.*) Respondent is registered to do business in New Jersey as a foreign profit corporation and designated Kakkar as its in-state agent for service of process. (Ex. 3 to Decker Decl., ECF No. 34-4.) Kakkar accepted service of process in this action on Respondent's behalf. (ECF No. 6.) Respondent lists "Himalaya International" and "Global Reliance" as associated names on its New Jersey registration. (Ex. 3 to Decker Decl.) As of March 23, 2023, its Business

Report shows that Respondent has "dissolution/withdrawal" proceedings pending from New Jersey. (*Id.*) Respondent's website listed its United States sales office at an address in Hamilton, New Jersey, (Ex. 1 to Decker Decl., ECF No. 34-2), which is the same address listed on Respondent's New Jersey foreign profit corporate registration, (Ex. 3 to Decker Decl.).

Himalaya International Inc. ("Himalaya International") is a New Jersey domestic profit corporation distinct from Respondent. (Ex. 4 to Decker Decl., ECF No. 34-5.) Like Respondent, Himalaya International registered to use the alternative names "Global Reliance" and "Himalaya Food International," designated Kakkar as its agent for service of process, and listed the same Hamilton, New Jersey address as its business registration. (*Id.*) Himalaya International began the process to dissolve as a New Jersey corporation and re-establish itself in Wyoming, but the dissolution process remains pending. (*Id.*; Ex. 5 to Decker Decl. at *2–5.) It now maintains an office at an address in Princeton, New Jersey. (Decl. of Sanjiv Kakkar ("Kakkar Decl.") ¶ 2, ECF No. 23-11.) Himalaya International maintains a bank account at PNC bank. (*Id.* ¶ 5.) In his declaration, Kakkar states that he is the CEO and sole shareholder of Himalaya International. (*Id.* ¶¶ 1, 3.)[4] Kakkar further states that Respondent has no ownership over Himalaya International and no control over or rights to Himalaya International's account at PNC bank. (*Id.* ¶¶ 3, 5.)

Regarding Respondent's business ties to Himalaya International, Kakkar characterizes it as a "buyer and seller" relationship. (Kakkar Decl. ¶ 4.) Kakkar declares that he is not aware of

---

[4] The parties dispute whether Kakkar remains Himalaya International's sole shareholder. Petitioners submitted documents showing that Himalaya International intended to acquire an Indian company, Doon Valley Foods Pvt. Ltd., in exchange for Malik acquiring a 50% stake in Himalaya International, and amended their state registration to add Malik as a director. (Ex. 5 to Decker Decl. at *18–20.) Respondent does not challenge the evidence that Malik was a director of Himalaya International but argues in its brief that the "transaction contemplated by the registration statement was never consummated" and that Kakkar remains Himalaya International's sole shareholder. (ECF No. 37 at 11 n.4.)

any "formal agreement" between the companies requiring Himalaya International to purchase food for distribution from Respondent alone. (*Id.*)

Petitioners performed a review of publicly available shipping records using variations of the name "Himalaya" for the periods August 1, 2021 to December 12, 2022 and June 1, 2022 to June 26, 2023. (*See* Decl. of Lawrence R. Pilon ("Pilon Decl."), ECF No. 34-21.) Petitioners identify 175 ocean import shipments sent by Respondent during the first period to the consignee Global Reliance at either the Hamilton or Princeton addresses associated with Himalaya International. (*Id.* ¶¶ 8–9.) In the second period, the records show 58 ocean import shipments from Respondent, of which 56 list Global Reliance as the consignee at the Princeton address. (*Id.* ¶¶ 10–11.)

### D.   FEDERAL PROCEDURAL HISTORY

Petitioners filed their Petition and Motion to Enforce on March 21, 2023. (ECF Nos. 1, 2.) On June 16, 2023, Respondent filed an Answer to the Petition, (ECF No. 22), as well as a Cross-Motion seeking relief on several grounds, (ECF No. 23). Respondent's Cross-Motion (1) opposed confirmation and enforcement of the Award and sought dismissal of the Petition on the grounds that the Court lacked personal jurisdiction over Respondent and that the Award was invalid under Indian Law, and (2) alternatively sought to stay the federal proceedings pending resolution of the matter before the High Court of Delhi. (*Id.*) Petitioners filed a brief opposing the requested stay and replying to Respondent's arguments against confirmation and enforcement of the award, (ECF No. 34), and Respondent filed a reply, (ECF No. 37). The parties have filed several more letters regarding the status of the Indian Court proceedings in the interim. (ECF Nos. 38–42.)

## II.  LEGAL STANDARDS

### A.  ENFORCEMENT OF ARBITRATION AWARDS

Federal district courts have jurisdiction over motions to confirm arbitration awards under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 21 U.S.T. 2517. The New York Convention, as implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–208, permits the recipient of a foreign arbitration award to seek enforcement of the award by a federal district court. *See Jiangsu Beier Decoration Materials Co., Ltd. v. Angle World LLC*, 52 F.4th 554, 559 (3d Cir. 2022). In reviewing a foreign arbitration award "a district court's role is limited—it must confirm the award unless one of the grounds for refusal specified in the [New York] Convention applies to the underlying award." *Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 307 (3d Cir. 2006) (citing *Compagnie Noga D'Importation et D'Exportation S.A. v. The Russian Federation*, 361 F.3d 676, 683 (2d Cir. 2004)). The affirmative defenses are "strictly applied" and viewed "narrowly." *Id.* at 308 (citing *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 283 (3d Cir. 2003)). The party seeking enforcement of the award bears the initial burden to provide the award and the underlying agreement, at which point the burden shifts to the party opposing confirmation to prove one of the five applicable defenses. *Jiangsu Beier*, 52 F.4th at 560 (discussing the New York Convention's "burden-shifting framework").

Because a party seeking enforcement of award does so through motion practice, 9 U.S.C. § 6, "[m]any of the ordinary procedural rules governing civil litigation are inapplicable to petitions under the New York Convention." *Jiangsu Beier*, 52 F.4th at 560. Decisions on such petitions result from "summary proceedings," *id.* (quoting *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 243 (3d Cir. 2021)), in which the court "may review the documents presented

7

by the parties" but "is not necessarily limited to factual allegations in the petition itself," *id.* (citing *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 314 (3d Cir. 2021)). While "further proceedings" may be appropriate to resolve a factual dispute, *id.*, the court must be "mindful that a confirmation petition presents a limited inquiry that typically should not 'develop into full scale litigation,'" *id.* at 563 (quoting *PG Pub'g, Inc.*, 19 F.4th at 314).

### B.   PERSONAL JURISDICTION IN ARBITRATION ENFORCEMENT

To enforce a foreign arbitration award, the district court must have personal jurisdiction over the parties, as the New York Convention "does not diminish the Due Process constraints in asserting jurisdiction over a nonresident alien." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 178–79 (3d Cir. 2006); *see also First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 749–52 (5th Cir. 2012) ("Even though the New York Convention does not list personal jurisdiction as a ground for denying enforcement, the Due Process Clause requires that a court dismiss an action, on motion, over which it has no personal jurisdiction."); *cf. marks Control Screening LLC v. Tech. Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 169 n.4 (3d Cir. 2012) (noting that in a proceeding brought under the New York Convention, the plaintiff "must prove, by a preponderance of the evidence, that the district court has the authority to exercise personal jurisdiction over the defendant" (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992)).

Once a defendant raises a personal jurisdictional defense, the "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996) (citations omitted). Permissible evidence to meet this burden must be more than an "unverified complaint," *Markferding v. Westmoreland Cnty. (Pa.) Domestic Rels. Off.*, No. 05-755, 2005 WL 1683744, at *3 (D.N.J. June 17, 2005), or bare

allegations made "upon information and belief," *Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*, No. 07-375, 2008 WL 65177, at *6 (D.N.J. Jan. 2, 2008) (citing *Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)).

## III.  <u>DISCUSSION</u>

Because it is dispositive in this matter, the Court begins its analysis with personal jurisdiction. Because Respondent has objected to the Court's exercise of personal jurisdiction over it, (ECF No. 23-1 at 15), Petitioners must establish personal jurisdiction before the Court may enforce the Award in this District.

Petitioners argue several avenues for the Court to exercise personal jurisdiction over Respondent. *First*, Himalaya International—a domestic New Jersey corporation—is an alter ego of Respondent, such that the former's undisputed ties to New Jersey should be attributed to Respondent for personal jurisdiction purposes. (ECF No. 34 at 13–17.) *Second*, Respondent consented to personal jurisdiction in New Jersey by registering to do business in the state and accepting service of process in the state. (*Id.* at 17–18.) *Third*, Petitioners contend that even if Respondent and Himalaya International are unrelated for jurisdictional purposes, the Court may nonetheless exercise *quasi in rem* jurisdiction over debts owed by Himalaya International to Respondent. (*Id.* at 18–20.) *Finally*, Petitioners argue that if the Court finds personal jurisdiction lacking, it should permit jurisdictional discovery. (*Id.* at 20–21.) The Court is unpersuaded and finds none of the bases applicable here.

A federal court sitting in New Jersey "has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e) and *Carteret Sav. Bank, FA*, 954 F.2d at 144). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States

9

Constitution." *Id.* (citing N.J. Court R. 4:4–4(c)). This Court therefore has personal jurisdiction over a party that has "constitutionally sufficient 'minimum contacts'" with New Jersey. *Id.* (quoting *Carteret*, 954 F.2d at 149).

A non-resident defendant may be subject to personal jurisdiction in a forum based on one of two types of personal jurisdiction: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Only a "limited set of affiliations" with a forum can give rise to general jurisdiction, such that, as stated, the defendant is essentially at home in the forum. *Id.* at 137. Specific jurisdiction arises when a defendant "purposefully avail[s]" itself of a forum and the plaintiff's claims arise from a defendant's contacts with the forum. *Ford Motor Co.*, 592 U.S. 351 (2021) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Petitioners do not argue that any of Respondent's alleged contacts with New Jersey are related to the parties' dispute. Therefore, specific personal jurisdiction is inapplicable here, and the Court will only consider whether Respondent is subject to general jurisdiction in the state.

### A.   GENERAL JURISDICTION VIA ALTER EGO THEORY

Petitioners do not assert that Respondent's contacts with New Jersey are, standing alone, sufficient to create all-purpose jurisdiction. Rather, Petitioners argue that Himalaya International, a New Jersey domestic corporation, is Respondent's alter ego and that Himalaya International's New Jersey contacts can be attributed to Respondent for personal jurisdiction purposes. (ECF No. 34 at 13–17.) In opposition, Respondent avers that any connections between it and Himalaya

International are insufficient to render the latter Respondent's alter ego. (ECF No. 37 at 10–13.) After careful consideration, the Court finds that Petitioners have not established that Himalaya International is Respondent's alter ego.

The contacts of a defendant company's alter ego may, under some circumstances, be treated as the defendant's contacts for the purposes of personal jurisdiction. Petitioners do not specify whether they seek the Court to pierce the corporate veil through an alter ego theory under federal common law or New Jersey state law.[5] However, the analysis is similar under either approach. *See Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988) (relying on federal common law veil piercing factors in case involving veil piercing under New Jersey law).

The Third Circuit has explained that "if a subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise 'controls' the subsidiary, then personal jurisdiction exists over the parent whenever personal jurisdiction (whether general or specific) exists over the subsidiary." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 781 (3d Cir. 2018) (citing *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 108–09 (3d Cir. 2009) and *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008)). Proving that one company is the alter ego of another is a "notoriously difficult" burden to meet. *Trinity Indus., Inc. v. Greenlease Holding Co.*, 903 F.3d 333, 365 (3d Cir. 2018) (quoting *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001)). Several non-exhaustive factors relevant to the analysis include "gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of [subsidiary] corporation, siphoning of funds from the [subsidiary]

---

[5] By explicitly discussing the standard for an alter ego finding under New Jersey law, the parties hint at agreement that New Jersey law provides the relevant standard. (ECF No. 34 at 14; ECF No. 37 at 10.) However, the parties also cite cases that do not apply New Jersey law. (ECF No. 34 at 14; ECF No. 37 at 11 n.5.) Out of an abundance of caution, the Court considers authorities drawing on both New Jersey and federal common law doctrines.

corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a façade for the operations of the dominant stockholder." *Id.* (quoting *Pearson*, 247 F.3d at 484–85). "[I]n order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that in all aspects of the business, the two corporations actually functioned as a single entity and should be treated as such." *Id.* at 365–66 (citation omitted).

New Jersey's view of corporate veil-piercing is similar. Like federal common law, the law in New Jersey "begin[s] with the fundamental propositions that a corporation is a separate entity from its shareholder." *New Jersey Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 164 (N.J. 1983) (citing *Lyon v. Barrett*, 445 A.2d 1153 (N.J. 1982)). As the New Jersey Supreme Court instructed:

> Under certain circumstances, courts may pierce the corporate veil by finding that a subsidiary was "a mere instrumentality of the parent corporation." Application of this principle depends on a finding that the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent. Even in the presence of corporate dominance, liability generally is imposed only when the parent has abused the privilege of incorporation by using the subsidiary to perpetrate a fraud or injustice, or otherwise to circumvent the law.

*Id.* at 164–65 (quoting *Mueller v. Seaboard Com. Corp.*, 73 A.2d 905, 908 (N.J. 1950)). This language is distilled into a two-prong test, requiring a plaintiff seeking to pierce the corporate veil to show both "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" as well as that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *N. Am. Steel Connection, Inc. v. Watson Metal Prod. Corp.*, 515 F. App'x 176, 179 (3d Cir. 2013) (quoting *State Cap. Title & Abstract Co. v. Pappas Bus. Servs.*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009)). Relevant, non-exclusive factors New Jersey courts consider to show the level of dominance necessary for the first prong are the

same as those listed above under federal common law. *See id.* at 180 (citing *Craig*, 843 F.2d at 150).

Petitioners have not established that Respondent exercises such "complete domination" of finances, policy, and business practice over Himalaya International to establish Himalaya International as Respondent's alter ego. *Id.* Petitioners have adduced evidence that:

- Respondent's website listed "Himalaya International Inc." as its "USA Office & Sales" location with an address in Hamilton, New Jersey. (Ex. 1 to Decker Decl. at 11.)
- Respondent is registered as a foreign corporation in New Jersey, and Himalaya International is registered as a domestic profit corporation in New Jersey, both at the same Hamilton, New Jersey address. (Ex. 3 to Decker Decl.; Ex. 4 to Decker Decl.)
- Kakkar is the co-founder, executive director, and president of Respondent, as well as a shareholder in and registered agent for Himalaya International, (Ex. 4 to Decker Decl. ¶ 6).
- Malik is the founder, chairman, CEO, and foreign registered agent of Respondent, as well as a director of (and a shareholder in) Himalaya International. (Ex. 2 to Decker Decl.)
- Each month, Respondent ships tens of thousands of pounds of frozen food to the United States with a listed consignee as Global Reliance, an alternate name of Himalaya International. (Pilon Decl. ¶¶ 8–12.)

Although these facts undoubtedly show a close relationship between Respondent and Himalaya, the Court finds them insufficient to establish the domination necessary to establish alter ego liability.

As an initial matter, as Respondent points out, (ECF No. 37 at 10–11), the authorities Petitioners rely on all involve parent and subsidiary corporations. The seminal New Jersey case Petitioners cite recognizes veil-piercing when "the parent *so dominated* the subsidiary that it had no separate existence but was merely a conduit for the parent." *Ventron Corp.*, 468 A.2d at 164 (citation omitted) (emphasis added). Here, Petitioners do not allege, let alone prove, a parent-subsidiary relationship between Respondent and Himalaya International. While not dispositive,

this by itself counsels against stretching the alter ego doctrine to allow veil-piercing when one company does not own the other. *See Reynolds v. Turning Point Holding Co., LLC*, No. 19-1935, 2020 WL 953279, at \*4 (E.D. Pa. Feb. 26, 2020) (finding that entities "operate as a single brand with common corporate control" was insufficient to "overcome the presumption that wholly-owned subsidiaries are separate and distinct from their parent companies"); *Visual Sec. Concepts, Inc. v. KTV, Inc.*, 102 F. Supp. 2d 601, 605–06 (E.D. Pa. 2000) (declining to find alter ego based on "preliminary" consideration that the alleged alter ego was "not a wholly-owned subsidiary" but rather "an independent distributor"). Even if Himalaya International were Respondent's subsidiary, this by itself would not be enough to meet Respondent's heavy burden. *See Portfolio Fin. Servicing Co. ex rel. Jacom Comput. Servs., Inc. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 626 (D.N.J. 2004) ("Liability will not be imposed on the parent corporation merely because of its ownership of the subsidiary . . . .").

Petitioners provide no information regarding many of the relevant factors under New Jersey or federal common law required for veil-piercing. Several of the factors—such as payment of dividends or capitalization—do not apply outside the parent-subsidiary context. The Court has no information from Petitioners to evaluate the remaining considerations, including whether Respondent fails to observe corporate formalities in interacting with Himalaya International, whether Respondent has transferred funds to Himalaya International in order to protect them from creditors, and whether Himalaya International maintains corporate records separate from those of Respondent. *N. Am. Steel Connection, Inc.*, 515 F. App'x at 179 (citing *Craig*, 843 F.2d at 150).[6]

---

[6] Although not raised by the parties, the Court notes that some flexibility in consideration of these traditional factors is sensible where the entities at issue are closely-held corporations. *See Trustees of Nat. Elevator Indus. Pension v. Lutyk*, 140 F. Supp. 2d 447, 460 (E.D. Pa. 2001) ("Although courts often do not hold closely-held corporations to strict standards with respect to corporate formalities, disregard of corporate formalities remains a factor of some significance even where the corporation is closely held."), *aff'd sub nom. Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188 (3d

Petitioners instead focus on two factors. *First*, Petitioners cite the two companies' overlapping executives and owners, (ECF No. 34 at 15–16), because alter ego may be shown by "the day-to-day involvement of the parent's directors, officers and personnel with the subsidiary." *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004). Indeed, Kakkar appears involved in both companies, as an executive director and president of Respondent and an owner of and registered agent for Himalaya International. (Ex. 4 to Decker Decl. ¶ 6.) Although the parties dispute whether Malik, Respondent's chairman and CEO, likewise owns any part of Himalaya International, *see* Section I.C, *supra*, for the purposes of the subject Motion, the Court presumes that he does. However, cross-pollination of executives and owners is not enough, by itself, to show the high threshold which is tantamount to complete domination. *See High 5 Games, LLC v. Marks*, No. 13-7161, 2019 WL 3761114, at *6 (D.N.J. Aug. 9, 2019) ("'[C]ommon ownership and common management alone' are insufficient for veil-piercing purposes." (quoting *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 426 (D.N.J. 2019))); *see also Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004) (overlapping boards of directors); *Laverty v. Cox Enters., Inc.*, No. 18-1323, 2019 WL 351905, at *4 (D.N.J. Jan. 29, 2019) (shared officers and directors). The fact that Respondent and Himalaya International share officers and perhaps even owners, without evidence of use of those positions to exploit and *de facto* merge the companies' relationship, is insufficient to justify veil piercing.

*Second*, Petitioners focus on the shipping records that show a close business relationship between the companies, (ECF No. 34 at 15), because another relevant consideration is "who the subsidiary does business with other than the parent," *Seltzer*, 339 F. Supp. 2d at 610. In fact, the

---

Cir. 2003). However, even allowing for this flexibility here, the Court finds that Petitioners have not shown corporate dominance suggesting extinguishment of the alter ego's separate identity *See N. Am. Steel Connection, Inc.*, 515 F. App'x at 179.

records show that Himalaya International is the principal, perhaps the sole, recipient of Respondent's shipments to the United States. (*See* Pilon Decl. ¶¶ 8–11.) While this factor surely militates in Petitioners' favor, it is insufficient to establish an alter ego relationship because the two companies can still operate separately even if the majority of their business is conducted with each other. *See Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544, 2021 WL 1207476, at *4 (D.N.J. Mar. 31, 2021) ("[N]nothing in the record indicates that [the foreign parent] exercised influence over [the domestic subsidiary's] marketing, sale, or distribution activities, creating a clear line of demarcation between parent-manufacturer and subsidiary-distributor.").

Respondent's website's recognition of the relationship between the companies, and the fact that they previously used the same New Jersey address and share similar names and branding, likewise do not demonstrate the required level of corporate dominance. *See Laverty*, 2019 WL 351905, at *4 (finding alter ego theory not established despite website stating that the parent "funnels" its business through the subsidiary and "general corporate and marketing statements that vaguely touch on the relationship" between the companies); *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 395 (D.N.J. 2019) (finding alter ego theory not established despite the parent and subsidiary sharing the same "brand"). As one Court in this District explained when rejecting a similar argument, the Court may not "extend the alter ego doctrine, such that entities utilizing the same brand, website, and policies would be imputed as alter egos," without also showing that the subsidiaries "ignored corporate formalities in day-to-day activities" or any of the other relevant factors. *See Horowitz v. AT&T Inc.*, No. 17-4827, 2018 WL 1942525, at *9 (D.N.J. Apr. 25, 2018).[7]

---

[7] Respondent also argues that exercising general personal jurisdiction over it based on the facts alleged would run afoul of *Daimler AG v. Bauman*, 571 U.S. 117 (2014). (ECF No. 37 at 12.) The Supreme Court

Finally, the Court notes that under New Jersey's test for veil piercing, some showing of fraud or injustice that would result in the absence of veil-piercing is also required in addition to establishing corporate dominance. "Except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil." *Ventron Corp.*, 468 A.2d at 164 (citing *Lyon*, 445 A.2d at 1156). While the Court can surmise from Petitioners' briefing that they would find it inequitable for the alter ego doctrine to not apply, Petitioners have not leveled that argument or proffered evidence that Respondent abused Himalaya International's corporate form for the purpose of transacting business in New Jersey without exposing itself to general jurisdiction here. Petitioners' alter ego theory fails for this additional reason.

## B.     CONSENT TO GENERAL JURISDICTION VIA REGISTRATION

Petitioners next argue that Respondent consented to jurisdiction in New Jersey by registering to do business here and accepting service by its designated agent. (ECF No. 34 at 17–18.) Respondent counters that the weight of authority in this District cuts against reading New Jersey's corporate registration statutes as constituting consent to personal jurisdiction. (ECF No. 37 at 14–15.) The Court agrees.

It is well established that parties can consent to personal jurisdiction. *See Burger King Corp.*, 471 U.S. at 472 n.14; *see also Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138 (2023)

---

in *Daimler* rejected the Ninth Circuit's agency theory that "appear[ed] to subject foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate, an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' [the Supreme Court] rejected in *Goodyear*." *Daimler AG*, 571 U.S. at 136. Indeed, other Courts in this district have recognized a tension between *Daimler* and the Third Circuit's alter ego personal jurisdiction theory. *See Rickman v. BMW of N. Am. LLC*, 538 F. Supp. 3d 429, 436–37 (D.N.J. 2021) (noting that the Third Circuit's language in *Shuker*, 885 F.3d at 781, was "hard to square with *Daimler*, which disfavored an agency approach to general jurisdiction"); *see also Mikhail v. Amarin Corp. plc*, No. 23-1856, 2024 WL 863427, at *5 n.10 (D.N.J. Feb. 29, 2024) (recognizing that "an agency theory, as opposed to the alter-ego theory" may not have survived *Daimler*). However, because Petitioners argue an alter ego theory rather than an agency theory to assert personal jurisdiction, the Court will not reach Respondent's agency arguments.

("[E]xpress or implied consent can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed." (citations omitted)). Under certain circumstances, a corporation's registration to do business in a state may evidence its consent to personal jurisdiction in that forum. *See Mallory*, 600 U.S. at 138–40 (plurality opinion); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991) (holding that a statute explicitly listing "consent" as a basis for personal jurisdiction over corporate defendants established personal jurisdiction).

Whether corporate registration constitutes consent turns on the text of the state's registration statute. *See Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 174 (D.N.J. 2016). In *Bane*, the Third Circuit noted that "[c]onsent is a traditional basis for assertion of jurisdiction long upheld as constitutional." 925 F.2d at 641. The relevant Pennsylvania statute in *Bane* stated that Pennsylvania courts could exercise general personal jurisdiction over a corporation based on either "[i]ncorporation under or qualification as a foreign corporation under the laws of this Commonwealth" or "consent." *Id.* at 640 (quoting 42 Pa. Cons. Stat. Ann. § 5301 (Purdon 1990)). The Third Circuit held that either the statutory provision explicitly stating that qualification as a foreign corporation subjected the corporation to personal jurisdiction in the state or the provision explicitly listing "consent" as a basis for jurisdiction supported a finding of personal jurisdiction over the corporate defendant. *Id.* at 641.

New Jersey's business registration statutes do not evidence that Respondent consented to jurisdiction by registering as a foreign profit corporation in New Jersey and appointing an in-state registered agent. In New Jersey, the relevant statutes are the foreign corporation registration statutes, (N.J. Stat. Ann. §§ 14A:13–3, 14A:4-1), and registered agent requirement statute, (N.J. Stat. Ann. § 14A:4–2), as well as New Jersey Court Rule 4:4–4. The first statute requires a foreign corporation doing business in New Jersey to "procure[] a certificate of authority . . . from the

Secretary of State." N.J. Stat. Ann. § 14A:13-3(1). Every registered foreign corporation must "continuously maintain a registered office in this State, and a registered agent having a business office identical with such registered office." *Id.* at § 14A:4-1(1). Section 14A:4-2 adds that a corporation can be served through its registered agent. *Id.* at § 14A:4-2(1). No language in any of these statutes references personal jurisdiction or consent or otherwise puts a foreign corporation on notice that compliance with them will subject the corporation to general personal jurisdiction in New Jersey.

New Jersey Court Rule 4:4–4 provides that a plaintiff may obtain "*in personam* jurisdiction*" over a defendant by serving in the state "any person authorized by appointment or by law to receive service of process on behalf of the corporation . . . ." N.J. Ct. R. § 4:4-4(a)(6). While this does explicitly reference personal jurisdiction, it does not mention consent or otherwise "contain any language intimating that the foreign corporation will be subject to suit in this state for conduct that occurred elsewhere." *Display Works, LLC*, 182 F. Supp. 3d at 176 (finding the above-cited New Jersey statutes and court rule do not evidence a corporation's consent to general personal jurisdiction in New Jersey). Unlike the Pennsylvania registration statute at issue in *Bane*, the New Jersey statutes do not explicitly provide that registration constitutes consent to general personal jurisdiction.

This reading is in line with the weight of other courts in this District, many of which have adopted the Honorable Madeline Cox Arleo's analysis in *Display Works*. *See Castillero v. Xtend Healthcare, LLC*, No. 22-2099, 2023 WL 8253049, at *5 n.8 (D.N.J. Nov. 29, 2023) (Castner, J.) (same); *Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462, 469 (D.N.J. 2021) (McNulty, J.) (same); *Ferguson v. Aon Risk Servs. Co.*, No. 19-9303, 2020 WL 914702, at *5 (D.N.J. Feb. 26, 2020) (Wolfson, J.) (same); *Frazier Indus. Co. v. Logrecco*, No. CV 18-12426, 2019 WL

13401926, at *6 (D.N.J. July 2, 2019) (Vazquez, J.) (same); *Horowitz*, 2018 WL 1942525, at *12

(Martinotti, J.) (same); *see also Dutch Run-Mays Draft, LLC v. Wolf Block, LLP*, 164 A.3d 435,

444 (N.J. Super. Ct. App. Div. 2017) ("New Jersey's foreign corporate registration and registered

agent statutes do not contain jurisdictional repercussions of registration.).[8]

Finally, the Court addresses two additional cases that could affect this conclusion. *First*,

Petitioners' argument that the Supreme Court's recent decision in *Mallory* overrules the holding

of the *Display Works* line of cases, (ECF No. 34 at 18 n.9), is unavailing. The question the plurality

in *Mallory* addressed was narrow: whether a state could compel registering corporations to consent

to general personal jurisdiction, which the Court held it could. 600 U.S. at 127. The fact that a state

*may* write its corporation registration laws in a way that explicitly constitutes consent does not

mean that every state corporation registration law necessarily does so. As explained above, the

question of consent by registration turns on the language of the state statute. Unlike the express

consent statute at issue in *Mallory*, New Jersey's registration statute does not include such an

express consent requirement. This Court, absent a legislative imprimatur, will not fill the void and

write one in.

*Second*, although not raised by the parties, the Court briefly considers whether the fact that

the present matter involves a party seeking to confirm an arbitration award should change this

conclusion. In *Telcordia Tech Inc.*, the Third Circuit's personal jurisdiction analysis was

"color[ed]" by the fact that the proceeding was for enforcement of an arbitral award under the New

York Convention. 458 F.3d at 178. However, the Court did not elaborate on what it meant for its

---

[8] Cases from this District have not uniformly answered whether New Jersey's registration and service statutes create consent to jurisdiction here. *See Basse v. Bank of Am., N.A.*, No. 22-3674, 2023 WL 2696627, at *7 (D.N.J. Mar. 29, 2023) (discussing the "two varying interpretations" of New Jersey's registration statutes). However, for the reason articulated above, the Court does not find their reasoning persuasive. *Contra Senju Pharm. Co., Ltd. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 436 (D.N.J. 2015).

analysis to be "color[ed]" except to state that the New York Convention's "desire to have portability of arbitral awards" affected "whether [the defendant] 'reasonably anticipate[d] being haled into' a New Jersey court." *Id.* at 179 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In the consent-by-registration analysis, however, the jurisdictional determination turns not on the defendant's contacts with the forum or reasonable anticipation of facing suit here but rather on the text of the statute. *See Display Works, LLC*, 182 F. Supp. 3d at 178–79 (disregarding defendant's contacts with New Jersey in analyzing whether New Jersey's registration statutes constituted jurisdictional consent). In any event, the Third Circuit maintained that the New York Convention does not "diminish the Due Process constraints in asserting jurisdiction over a nonresident alien." *Telcordia Tech Inc.*, 458 F.3d at 178–79. Therefore, *Telcordia* does not alter the Court's conclusion.

### C.    *QUASI IN REM* JURISDICTION

Petitioners also argue that the Court may exercise *quasi in rem* jurisdiction over Himalaya International's debts owed to Respondent, allegedly held in New Jersey bank accounts. (ECF No. 1 ¶ 8; ECF No. 34 at 18–20.) Respondent objects on the grounds that it lacks sufficient interest or control in any New Jersey-based property for *quasi in rem* jurisdiction to extend here. (ECF No. 23-1 at 18–19.)

Under limited circumstances, a court may exercise *in rem* jurisdiction over property located within its district. The Supreme Court laid out the basics of the doctrine in *Shaffer v. Heitner*, 433 U.S. 186 (1977). A *quasi in rem* judgment "affects the interests of particular persons in designated property," including when a "plaintiff seeks to apply what he concedes to be the property of the defendant to the satisfaction of a claim against him." *Id.* at 199 n.17 (quoting *Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958)). The rationale for permitting the exercise of

personal jurisdiction over property is that "a wrongdoer 'should not be able to avoid payment of his obligations by the expedient of removing his assets to a place where he is not subject to an in personam suit.'" *Id.* at 210 (quoting Restatement (Second) of Conflict of Laws § 56 (Am. L. Inst. 1971)). Furthermore, once "a court of competent jurisdiction" determines that a defendant owes the plaintiff, the court in a state where the defendant has property may exercise jurisdiction "whether or not that State would have jurisdiction to determine the existence of the debt as an original matter." *Id.* at 210 n.36. "The effect of a judgment in such a case is limited to the property that supports jurisdiction and does not impose a personal liability on the property owner, since he is not before the court." *Id.* at 199.

The cases applying this doctrine to find personal jurisdiction in order to enforce a judgment are few. This does not foreclose the relief Petitioners request, but it does urge a cautious approach to the doctrine's application. Petitioners rely on *CME Media Enters. B.V. v. Zelezny*, No. 01-1733, 2001 WL 1035138 (S.D.N.Y. Sept. 10, 2001) as an example of a matter in which a court found *quasi in rem* jurisdiction over property. There, the petitioner secured a $23.35 million arbitration award from a panel in Amsterdam against the respondent and sought a federal court to exercise jurisdiction over $0.05 held in the respondent's Citibank account in the district. *Id.* at *1–2. The court found that it could exercise *quasi in rem* jurisdiction over the $0.05 held in the respondent's bank account. *Id.* at *3–4. The court held that this exercise of jurisdiction was permissible even absent a showing of minimum contacts because an "arbitration panel with personal jurisdiction over [the respondent] has already adjudicated [the respondent's] claims . . . ." *Id.* at *3 (citing *Shaffer*, 433 U.S. at 199 n.17).

As in *CME Media*, in the few available cases in which courts have exercised *quasi in rem* jurisdiction, the respondent's interest in the property that serves as the jurisdictional hook is clear.

*See, e.g.*, *Equipav S.A. Pavimentacao, Engenharia e Comercio Ltda. v. Bertin*, No. 22-4594, 2024 WL 196670, at *7 (S.D.N.Y. Jan. 18, 2024) (finding *quasi in rem* jurisdiction over an in-district bank account belonging to respondent); *La Dolce Vita Fine Dining Co. v. Zhang*, No. 21-3071, 2023 WL 1927827, at *3–4 (S.D.N.Y. Feb. 10, 2023), *vacated by consent*, No. 23-480, 2023 WL 5686197 (2d Cir. Aug. 30, 2023) (finding *quasi in rem* jurisdiction over in-district apartment based on "email exchanges and other documents that unambiguously demonstrate [respondent's] interest in the apartment"); *Crescendo Mar. Co. v. Bank of Commc'ns Co.*, No. 15-4481, 2016 WL 750351, at *5 (S.D.N.Y. Feb. 22, 2016) (finding *quasi in rem* jurisdiction over an respondent bank's assets of $4.8 billion maintained in Manhattan). In contrast, where the debtor's interest in property is less clear, courts decline to exercise *quasi in rem* jurisdiction over the property. *See, e.g.*, *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1128 (9th Cir. 2002) (declining to exercise *quasi in rem* jurisdiction where "the best [petitioner] can say is that it believes in good faith that [respondent] has or will have assets located in the forum"); *Lerman v. Lerman*, No. A-1953-07T3, 2009 WL 2365973, at *4–5 (N.J. Super. Ct. App. Div. Aug. 4, 2009) (declining to exercise *quasi in rem* jurisdiction over funds in bank account that did not belong to defendant but rather to a trust of which he was the beneficiary); *Cargnani v. Pewag Austria G.m.b.H.*, No. 05-133, 2007 WL 415992, at *11 (E.D. Cal. Feb. 5, 2007) (finding no *quasi in rem* jurisdiction because the only identified assets "belong[ed] to [the respondent's] subsidiary, not to respondents, and petitioner does not cite any other specific asset which could be attached").

Petitioners' *quasi in rem* claim, based on food shipments from India Respondent makes to Himalaya International in New Jersey, does not support finding *quasi in rem* jurisdiction. Each month, Respondent ships many tons of frozen food to the United States to Global Reliance, which Respondent does not contest is merely an alternate name of Himalaya International. (Pilon Decl.,

ECF No. 34-21 ¶¶ 8–11.) Petitioners write that "[u]nless Himalaya International is buying container loads of frozen foods in cash, it owes debts to [Respondent] for the shipments that it bought on credit. [Respondent] has a property interest in that debt." (ECF No. 34 at 19.) Respondent acknowledges that Himalaya International maintains a bank account at PNC bank in New Jersey, but asserts that Respondent has no authority or control over the account and has no rights over any potential funds held in the account in the event Himalaya International failed to pay Respondent. (Kakkar Decl. ¶ 5.)

Here, the Court finds that Petitioners' surmise that Himalaya International's New Jersey bank account holds assets to which Respondent may have a claim is insufficient to establish property interest sufficient to support *quasi in rem* jurisdiction over the account. As explained above, the handful of cases in which courts have exercised *quasi in rem* jurisdiction have involved in-jurisdiction assets to which the respondent or defendant had the only claim and to which the claim was ironclad. Petitioners cite no cases in which courts exercised *quasi in rem* jurisdiction where the rights to the assets at issue was uncertain or speculative.[9] The possibility that Respondent *may* have interest in a third party's assets held in an in-jurisdiction bank is an insufficient basis to exert *quasi in rem* jurisdiction over the third party's bank account. *See CME Media Enterprises B.V.*, 2001 WL 1035138, at *5 ("*[Q]uasi in rem* jurisdiction cannot be based on speculation about the possible existence of other property."). To permit a Court to exercise jurisdiction over the assets of defendant in any forum in which the defendant's contractual counterparty maintains a

---

[9] Petitioners' reliance on *HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas y Oleicos S.a. de C.V.*, No. 04-6884, 2005 WL 1036127 (S.D.N.Y. May 4, 2005) is unavailing. (ECF No. 34 at 18–19.) Although the case did involve property interest in a debt owed, the decision arose in the unique context of maritime law and whether property could be attached pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims. *HBC Hamburg Bulk Carriers*, 2005 WL 1036127, at *3.

bank account from which the defendant may be owed money would stretch the *quasi in rem* doctrine beyond the relatively narrow limits courts have so far recognized.

### D.   JURISDICTIONAL DISCOVERY

Having determined that Petitioners have failed to establish personal jurisdiction over Respondent, the Court turns to Petitioners' request for jurisdictional discovery. (ECF No. 34 at 20–21.) Respondent opposes the request, arguing that any discovery could not change the Court's analysis of Petitioners' alter ego or *quasi in rem* theories. (ECF No. 37 at 12 n.6.)

When jurisdiction is lacking, the Court may permit jurisdictional discovery "[i]f a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite contacts between the party and the forum state . . . ." *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). A party seeking to establish personal jurisdiction will ordinarily be permitted to conduct jurisdictional discovery unless the basis for jurisdiction is "clearly frivolous." *See Shuker*, 885 F.3d at 781 (citation omitted). However, a plaintiff's allegations alone may not be the basis to "force defendants to start handing over evidence." *See Aldossari ex rel. Aldossari v. Ripp*, 49 F. 4th 236, 259 (3d Cir. 2022) (citation omitted); *see also LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478 (3d Cir. 2011) (explaining that the Third Circuit has "cautioned against allowing jurisdictional discovery to serve as 'a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery'" (quoting *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010))).

Here, the Court finds no basis to permit discovery into Petitioners' personal jurisdiction theories. Regarding Petitioners' alter ego theory, the bases for Petitioners' arguments are largely uncontested. Respondent and Himalaya International share an employee and possibly owners,

Himalaya International functions as Respondent's exclusive distributor in the United States, and the companies operate under the same brand. Absent any evidence suggesting with reasonable particularity Respondent's "complete domination" of Himalaya International's finances, policies, and business practices, *N. Am. Steel Connection, Inc.*, 515 F. App'x at 180, there is no basis to permit discovery into Respondent's operations. Regarding *quasi in rem* jurisdiction, Petitioners' speculation that because Respondent and Himalaya International do business and the latter has a bank account in New Jersey, Respondent has a claim to the account's assets as could support *quasi in rem* jurisdiction is too tenuous to permit further discovery. As explained above, even if Petitioners' speculation was borne out, Petitioners offer no authority for the Court to exercise *quasi in rem* jurisdiction over assets in the bank account of Respondent's contractual counterparty.

\* \* \*

Therefore, Petitioners have not met their burden to establish the Court's personal jurisdiction over Respondent such that it may enforce the Award against Respondent in this District. Because any evidence Petitioners would seek in discovery would not alter the Court's conclusions, permitting Petitioners to proceed to jurisdictional discovery is inappropriate.[10]

---

[10] Because the Court finds it lacks personal jurisdiction, it need not reach Respondent's alternative challenge to enforcement of the award based on argument that the MA is invalid under Indian Law. (ECF No. 23-1 at 19.) Likewise, the portion of Respondent's Motion seeking to stay a decision on the Petition, (*id.* at 22), will be denied as moot.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Petitioners' Motion to Confirm (ECF No. 2) is **DENIED**, Respondent's Cross-Motion to Stay or Dismiss (ECF No. 23) is **DENIED** in part and **GRANTED** in part, and the Petition to Enforce (ECF No. 1) is **DISMISSED**. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated:</u> March 14, 2024